FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ MAR 03 2010 ★

BROOKLYN OFFICE

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

**CV 10- 0943**

|  |  |  |
|---|---|---|
| Baltia Air Lines, Inc. | ) | COMPLAINT AND |
| Office of General Counsel | ) |  |
| 1915 Eye Street, NW | ) | MOTION FOR |
| Washington, DC 20006-2118 | ) | TEMPORARY  RESTRAINING |
| Plaintiffs, | ) | ORDER AND |
| vs. | ) | PRELIMINARY INJUNCTION |
|  | ) |  |
| Standard Registrar & Transfer Co., Inc. | ) | **GLEESON, J.** |
| 12528 South 1840 East | ) |  |
| Draper, UT 84020 | ) |  |
| Defendant. | ) | **J. ORENSTEIN, M.J.** |

## COMPLAINT AND

## EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

Plaintiff Baltia Air Lines, Inc., complains against Standard Registrar & Transfer Co., Inc.

for knowingly transferring, or threatening to transfer, stolen shares and requests that this court

grant a temporary restraining order against Standard Registrar & Transfer Co., Inc. to be

continued, if needed, as a Preliminary Injunction following a hearing, if required, until the SEC,

FBI, and police of New York take appropriate action.


## JURISDICTION

This matter arises out of federal regulation of securities and securities transfer agents.

Defendant, categorized under Stock and Bond Transfer Agents, is a Utah corporation doing

business with Plaintiff in New York through US mail, email and courier.  At issue are stolen

securities with a current value of $320,000 at risk of being lost if transferred into fungible shares

in the public market.  Venue is proper. Plaintiff's Executive Office is located in Queens, NY.

Plaintiff Baltia Air Lines, Inc. (Baltia),  with headquarters in New York  is a U.S. airline designated by the U.S. Department of Transportation to provide passenger, cargo and mail scheduled air service between New York and St. Petersburg, Russia.  It is an SEC quarterly reporting company whose shares are publically traded on NASDAQ OCTBB.

Defendant Standard Registrar, & Trust Co., Inc. (Standard Registrar), the registered transfer agent for Baltia Air Lines, Inc., has received notice of this matter and has remained silent.

## COMPLAINT

1.   Four million shares of Baltia stock have been stolen through sophisticated layered financial scam and, unless Standard Registrar is stopped, four million share are at risk of being transferred into the street name, Cede & Co., where they will be fungible shares and, thus, disappear.


2.   The injunctions are requested to empower Standard Registrar to freeze further transfer of certificate 1591 for such time to permit securities and law enforcement agencies to complete their investigations and actions.


3.   On or prior to January 2008, Baltia engaged Standard Registrar as its registered transfer agent to handle the transfer of shares issued by Baltia.   All activity related to the issuance of shares has taken place in or about Queens and JFK Airport, NY.  All activity between Baltia and Standard Registrar occurs through US mail, telephone, email and courier.

4.   On March 23, 2009, through Standard Registrar, Baltia issued 15,000,000 common shares to Sunshine Design 09, Inc., certificates 1542, 1543, 1544, 1545 and 1546.

5.   On June 20, 2009, Baltia wrote to Standard Registrar stating that it "may have been the victim of a conspiracy of fraudulent taking of 15,000,000 common shares of Baltia Stock." Identified therein as certificates: 1542, 1543, 1544, 1545, 1546.

6.   In that June 20, 2009 letter, Baltia advised Standard Registrar in writing that the 15,000,000 shares were exchanged for equity investments.  Baltia had received neither money nor credit from Sunshine Design 09, Inc., yet Sunshine Design 09, Inc. had transferred certificates 1542, 1544, 1545 and 1546 to Carolyn Brown-Beochman and had transferred certificate 1543 to SOS Resource Services, Inc. as certificate 1591.

7.   The June 20, 2009 letter stated  "Do not execute any transactions and retain all certificates related to those issued to Sunshine Design 09, Inc. on March 23, 2009."

8.   In that June 20, 2009 letter, Baltia specifically requested "that the stock certificates identified above [ therein] be confiscated and no transfers be affected for Baltia's certificates held by Sunshine Design 09, Inc., Carolyn Brown-Boechman, and SOS Resource Services, Inc. or successive transferees.

9.   Baltia's General Counsel stated that enforcement authorities would be involved if neither shares nor equity investments were returned.

10.   On July 8, 2009, Baltia's General Counsel wrote to Standard Registrar that the Sunshine Design 09 Inc. had agreed to voluntarily return said shares but the stop previously placed on those shares were to remain in place until released or revoked by Mr. Dmitrowsky.

11.   On July 8, 2009, Standard Registrar reminded Baltia that the shares had been transferred and asked if the shares were being returned by the transferees.

12.   On or about July 8, 2009, Baltia confirmed that the transferred shares were being returned by transferees and it was understood that they would be cancelled by Standard Registrar and retained as treasury shares.  The stop was not to be lifted on future transfers to give assurance that a scam would not be perpetrated further while Baltia gave time in which to return the shares.

13.   On August 14, 2009, Baltia returned 11,000,000 shares [certificates 1592 1593, 1594, and 1594] to Standard Registrar with the additional note that the remaining 4,000,000 shares transferred to SOS Resource Services, Inc. [certificate 1591] had been fraudulently taken. The stop was to remain on certificate 1591.

14.   On September 23, 2009, Baltia wrote to Standard Registrar to hold the STOP on Baltia certificate 1591.  "DO NOT place certificate in Cede & Co name."

15.   In that email of September 23, 2009, Baltia wrote that pursuant its August 14th letter to Standard Registrar, Baltia had initiated enforcement action as to certificate 1591. It then appeared that certificate 1591 had been delivered to a third person who was to personally deliver it to Steffanie J. Lewis [Baltia's General counsel] on Monday, September 28, 2009. Nevertheless STOP was to hold in the event there was no delivery.

16.   In the email of September 23, 2009, Baltia wrote that it had learned that a letter dated 8/6/2009 from Andrew Garduno (spelling unsure as name was given over the telephone), Transfer Agent, stated that there were no restrictions on certificate 1591. Therefore, "Until receipt of my email confirming receipt [of certificate 1591], PLEASE STOP ANY ATTEMPTED TRANSACTION ON CERTIFICATE 1591".

17.   On February 26, 2010, Baltia wrote confirming that certificate 1591 was obtained through fraud. An FBI investigation had been initiated and charges had been filed against Mr. Russo, dba SOS Resource Services, Inc.

## MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.

### FACTS

Mr. Russo built false legitimacy as a banker through a confidence scheme involving layers of five professionals, including, former brokers and Wall Street heavyweights as well as a New York registered corporation, all of whom individually and collectively introduced and vouched for him. (Herein "validators")

Mr. Russo, acting individually and collectively with his validators, convinced a trusted long time friend of Baltia's President & CEO that two bank letters of credit, each for $5,000,000, and a cash investment of $2,500,000 were immediately available to the Airline. (Herein "validators".) In exchange for this funding Baltia was to issue 15,000,000 shares in the name of "Sunshine Design 09 Inc.". In good faith and convinced of the immediate investment, Baltia fulfilled its obligation, ordered the shares and delivered them to Baltia's trusted long time friend. The validator responsible for delivering the equity investment was temporarily but reasonably delayed.

Shortly after, Sunshine Design 09, Inc. transferred four million shares to Mr. Russo in the name "S.O.S. Resources, Inc."  When neither the bank letters of credit nor cash investment materialized, Sunshine Design 09, Inc. returned to Baltia 11, 000,000 shares along with a note. The note requested Baltia's help to get from Mr. Russo the 4,000,000 shares which Sunshine had transferred into the name of S.O.S. Resources, Inc., Baltia certificate 1591.

Mr. Russo refused to return the shares and an SEC on-line complaint was filed then with drawn and refiled as follows.  Baltia withdrew the complaint when certificate 1591 was faxed to Baltia's General Counsel as proof that one validator held certificate 1591 and would hand deliver it the following Monday.  Delivery did not occur.  The validator returned certificate 1591 to Mr. Russo and the SEC complaint was refiled on-line.

Mr. Russo said he had changed his mind and was going to keep the shares.  Baltia explained that he would not be able to transfer the certificate because a stop had been placed with Baltia's transfer agent.  Mr. Russo was so self-confident in the effectiveness of his scheme, that he told me to convey the message to the Airline that it was a good reasonable financial

calculation to forget about the 4 million shares. He argued that the legal cost of getting the shares back was greater than the value of the shares.

In addition to the SEC complaint, Baltia filed a complaint with the FBI in New York and in Miami, both with jurisdiction over SOS Resources, Inc., of which Mr. Russo is a principal of record. As both FBI and SEC investigations are confidential none of their activities are public knowledge.

On or about February 25, 2010, Mr. Russo sent the stock certificate to Baltia's transfer agent for transfer into "Cede & Co", a street name, so that the 4,000,000 shares becomes fungible. If Defendant Standard Registrar transfers certificate 1591 into the street name, Cede & Co, the enforcement agencies may complete their tasks, but Baltia would lose 4,000,000 shares.

### Substantial Likelihood Exists That Plaintiff Will Prevail on the Merits

The evidence supports an immediate TRO and a Preliminary Injunction against Standard Registrar's transferring certificate 1915 until the securities and law enforcement agencies complete their investigation and take appropriate action. Attached evidence shows that Standard Registrar and Mr. Russo were given notice that a stop had been placed on Baltia's stock certificate 1591. When told, Mr. Russo denied to Baltia that a stop existed but did not contest the stop with Standard Registrar.

Prior to putting shares into the street name, Cede & Co., shares must be held for the requisite period of time. However, this can occur before the requisite time expires provided there is an opinion of Counsel that the certificate was validly issued and fully paid. There are on-going investigations concerning certificate 1591 and Mr. Russo could not have obtained an opinion of counsel. He waited the requisite period of time and last Friday, Standard Registrar received

certificate 1591 with Mr. Russo's direction to place the certificate into the street name.

Because transfering Mr. Russo's shares before enforcement investigations are complete is irrational, Baltia will prevail in obtaining a Preliminary Injunction for such period of time as is required by the securities and law enforcement agencies to complete their investigations and take appropriate action.

## Plaintiffs Face Irreparable Injury If Injunctive Relief Is Not Granted

Four million Baltia shares were stolen in a sophisticated scam. Baltia has received no value for 4,000,000 shares. If certificate 1591 is transferred into the street name, Cede & Co., the shares will become fungible and lost to Baltia.

Baltia's shares are listed on NASDAQ OTCBB. The current value, $320,000, of those shares does not adequately reflect Baltia's loss if the 4,000,000 are transferred into a street name and lost. Following designation by the US Department of Transportation, Baltia became eligible to apply for FAA certification which was done. Baltia expects to initiate the scheduled service in early summer. When scheduled service commences, the per price share of Baltia stock is expected to increase. Capital derived from the future sales of the 4,000,000 shares would be used in the Airline's expansion of routes.

Finally when 4,000,000 shares are taken without benefit to the Airline, those shares dilute the value of the shares for which honest investors paid good money. Once the shares are fungible, they cannot be returned.

**Plaintiffs Will Suffer Greater Injustice If Relief Is Denied than Any Harm to Defendants Caused by Granting Relief.**

Relief will enable Standard Registrar to refrain from transferring certificate 1591 into the street name, "Cede & Co". Until securities and law enforcement investigations and appropriate action is complete, certificate 1591 remains as status quo.

Mr. Russo cannot now claim harm caused by any dely in transferring certificate 1591 into fungible shares, i.e. "Cede & Co". He could have sought transfer months ago by requesting an opinion of Counsel and proving to counsel that certificate 1591 had been validly issued and fully paid.

The greater public injustice would result to Baltia if transfer of certificate 1591 allows Mr. Russo to simply walk away with 4,000,000 shares to sell with impunity. Public injustice occurs if Standard Registrar enables Mr. Russo to effect his theft.


**Granting Plaintiff Injunctive Relief Will Not Disserve the Public Interest**

Allowing for the investigation and appropriate action does not disserve the public interest in any way. The public has a strong interest in allowing enforcement agencies to complete investigations when theft by misrepresentation is charged.

The public has an interest in having stock certificates transferred expeditiously. However, the public has strong interest in preventing transfer and sale of shares that have not been validly issued and from having outstanding shares, for which no value was received, dilute the value of fully paid shares.

The actions taken by Baltia to stop the transfer of certificate 1591 during the requisite period of time is consistent with the public interest of stopping circulation of invalidly issued shares and dilution of validly issued one until enforcement agencies complete investigations.

An injunction is especially appropriate when, as here, it would preserve the status quo ante. *Northeastern Florida Chapter of Assoc. Of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1284 (11th Circuit) ("The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated.") In the instant case, the status quo is needed until the enforcement agencies can act appropriately.

Baltia acknowledges that a preliminary injunction is an extraordinary form of judicial relief. (*Morgan Stanley DW*, 150 F Supp.2d at 73."As the Supreme Court has said, '[i]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997). Baltia has attached documents that clearly show that, if a Preliminary hearing is required, it will prevail. Standard Registrar does not oppose.

**WHEREFORE,** Baltia requests that Standard Registrar & Transfer Co., Inc. be restrained from any transfer of certificate 1591 issued to SOS Resource Services, Inc. and restrained from returning certificate 1591 to Mr. Russo, SOS Resource Services, Inc. or any successor until such time as the SEC, FBI and police of New York and Miami take appropriate action.

Respectfully submitted,

_____          March 1, 2010

Steffanie J. Lewis, DC Bar #373 078
General Counsel
Baltia Air Lines, Inc.
1915 Eye Street, NW, Suite 500
Washington, D.C. 2006-2118
Telephone: 202 296-1111 Fax: 202 296-1175
E-mail: azlewis@iblf.com


## VERIFICATION

A draft of a complaint and proposed order were emailed to Standard Registrar and

Transfer Co., Inc. at approximately 12:57 pm on March 1,2010.  Thereafter, I spoke by telephone

with Standard Registrar.   They had submitted the draft to legal counsel but denied me any access

to him.   This evening after offices were closed, I received the name and telephone number.  I

called and left a voice message.

Under penalty of perjury, I, Steffanie J. Lewis, affirm that the above facts are true and

correct to the best of my knowledge

_____

Steffanie J. Lewis          March 1, 2010

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Baltia Air Lines, Inc.<br>Office of General Counsel<br>1915 Eye Street, NW<br>Washington, DC 20006-2118 | )<br>)<br>)<br>) | COMPLAINT AND |
| Plaintiffs, | ) | MOTION FOR |
| vs. | ) | TEMPORARY RESTRAINING<br>ORDER AND |
| Standard Registrar & Transfer Co., Inc.<br>12528 South 1840 East<br>Draper, UT 84020 | )<br>)<br>)<br>) | PRELIMINARY INJUNCTION |
| Defendant. | ) | |

## ATTACHMENTS

A.   Affidavit of Mr. Dmitrowsky, President of Baltia Air Lines, Inc. . . . . . . . . . . . . . 13-16

B.   Affidavit of Mr. Barry Clare, VP Finance, Baltia Air Lines, Inc. . . . . . . . . . . . . . 17-18

C.   4/13/2009   Issuance of certificates to Sunshine Design 09 Inc . . . . . . . . . . . . . . . . 19

D.   5/8/2009   Sunshine transfer shares to SOS Resource Services Inc . . . . . . . . . . . . 20

E.   6/20/2009   Dmitrowsky Letter to Standard Register re 15,000,000 shares . . . . . 21-22

F.   7/08/2009   Emails re return of subject shares . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-24

G.   Sunshine Design 09, Inc note requesting help to obtain certificate 1591 . . . . . . . . . . 25

H.   8/14/2009   Letter re return of 11,000,000; stolen 4,000,000 shares and<br>Russo told Baltia re Transfer Agent wrote no restriction on 1591 . . . . 26

I.   9/22/2009   SEC Complaint file, withdrawn and subsequently refiled . . . . . . . . 27-29

J.   9/23/2009   Emails re continued hold on certificate 1591 . . . . . . . . . . . . . . . . . . . . . . 30

K.   10/23/2009   FBI Investigation Initiated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

L.   2/26/2010   Email to Standard Registrar re certificate 1591 taken fraudulently,<br>enforcement pending . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32





JFK International Airport, Terminal 4, Unit 262.089, Jamaica, NY 11430

July 31, 2009

### AFFIDAVIT OF IGOR DMITROWSKY, PRESIDENT, BALTIA AIR LINES, INC.
### REGARDING
### 4,000,000 SHARES STOLEN BY SALVATORE RUSSO

I, Igor Dmitrowsky, President of Baltia Air Lines, Inc., (Baltia), JFK, Terminal 4, affirm as follows:

4,000,000 shares have been stolen from Baltia Air Lines by Salvatore Russo d.b.a. SOS Resource Services, Inc, Miami, FL, through a sophisticated scam.

Mr. Russo extracted 4,000,000 Baltia shares, in a conspiracy of five Wall Street professionals, who deceived me and the other Baltia personnel into believing that they had cash and cash equivalents equal to $12,500,000 to exchange for 15,000,000 common shares to be issued in the name of Sunshine Design 09, Inc. When neither cash nor cash equivalents were delivered, I confronted the group and requested that the shares be returned. Indeed, 11,000,000 shares were returned. However, 4,000,000 shares fraudulently taken by Mr. Russo have not been returned. Mr. Russo appears to be the mastermind and he, alone, is retaining the ill-gotten shares with the apparent intent of keeping them.

Mr. Russo falsely presented himself as an investor. Mr. Russo gained access to Baltia, as well as the credibility he needed, by being introduced through a personal friend of mine, and by using knowing or unwitting accomplices, who themselves appear to have been deceived by Mr. Russo.

Mr. Russo appears to specialize in financial crimes that are intentionally designed to be complex and convoluted, in order to detract attention from himself, to muddy the waters, and to buy time for stock to become free-trading. We are startled by the skill with which Mr. Russo injects confusion, creates artificial conflicts, and manipulates people with changing promises that are outright lies. We have now learned that, under a similar scenario several years ago, Mr. Russo was accused of stealing 8,000,000 shares from another corporation in 2002.

This is the chronology:

Mr. Kevin Malone is a friend of mine for several years and he has an educational background in aviation. He and I have been discussing Baltia Air Lines, on and off. In 2008, Mr. Malone took a position at R.F. Lafferty & Co. as a Sr. V.P., and continued discussions with me and Barry Clare, Baltia's Vice President of Finance, about the company's future, financing and its general daily progress toward initiating revenue flights between New York - St. Petersburg, Russia, pursuant to US Department of Transportation authority granted to Baltia.

On March 17, 2009, I received a telephone call from Mr. Malone stating that he had financing in

63-25 Saunders St, Ste 71 Rego Park, NY 11374    Tel 718 275-5205  Fax 718 275-4731

*13*

place for Baltia to accelerate the project. That day, Mr. Malone arrived at Baltia's JFK Airport headquarters and introduced his colleagues as the "dream team of Wall Street": Mr. Thomas Fisher, Mr. Bruce Klein, and Mr. Patrick Kolenik. Mr. Malone introduced Mr. Fisher as his representative to coordinate and transact the financing because, as a broker, Mr. Malone could not so function. Mr. Kolenik was introduced as an associate of Mr. Malone's and the Wall Street heavyweight. Mr. Malone affirmed.

Mr. Fisher conducted the meeting as leader and implied that all three team members comprised Sunshine Design 09, Inc. They had an immediate bank letter of credit for $5,000,000 and a cash investment of $2,500,000 as well as a second bank letter of credit for $5,000,000 which was not to be used until commencement of revenue flights. All of the "team" nodded and expressed affirmation. Mr. Kolenik mocked Barry Clare, our VP of Finance for his simplistic, old-fashioned way of raising capital and told him to retire explaining, now that Baltia was so close to launching, the real Wall Street specialists were providing the proper funding.

For the investment Mr. Malone said they wanted 15,000,000 shares issued in the name of Sunshine Design 09, Inc. I, in consultation with Barry Clare V.P. Finance, agreed to the investment. Mr. Malone stated that the financier was a major shareholder of Air Atlanta, the Icelandic airline with which Baltia had been negotiating a Boeing 747 lease/purchase, and I was told to go ahead and purchase the airplane outright the following week. Baltia arranged for the issuance of the shares.

On March 24, 2009, as agreed, I personally handed certificates for 15,000,000 shares to Mr. Malone. We were expecting immediate receipt of the funds. However, espousing a reasonable excuse, Mr. Fisher did not deliver the cash and cash equivalents as initially stated. Nevertheless, I expected Mr. Fisher to deliver them imminently.

In April, Mr. Klein and Mr. Fisher brought Mr. Salvatore Russo to the Baltia's JFK headquarters and introduced him as the source of financing!?! This was the first I or anyone at Baltia knew of Mr. Russo. I, and other Baltia personnel, understood, believed and had issued shares to Sunshine Design 09, Inc. because the "dream team" allegedly had the financing in place. Now there was a third party. Mr. Russo confirmed that he was indeed the investor and banker providing two bank letters of credit for $5,000,000 each. Mr. James Morrell, who accompanied Mr. Russo, nodded in confirmation. It now appears that Mr. Morrell's only function was to lend support to Mr. Russo's misrepresentation.

Then the story started changing. Mr. Fisher affirmed that he was providing the $2,500,000 cash investment. Shortly thereafter, Mr. Russo telephoned Baltia saying that, in addition to the bank credit lines, he wanted to personally invest in Baltia's private placement which was unrelated to the funding that he and Mr. Fisher were providing. He planned to invest $250,000 personally and claimed to have high net worth associates lined up for $1,200,000 ready to invest in Baltia's old private placement. He asked for a commission agreement on those investments. He was very pleasant and seemed eager.

Shortly thereafter, Mr. Fisher telephoned to me stating that Sunshine Design 09, Inc. was transferring 4,000,000 shares to Mr. Russo for his funding of Baltia. Initially, we had been lead to believe that Sunshine Design 09, Inc. was the financing source when Baltia issued the shares, but now Mr. Russo was introduced as the source of money behind it. I called Kevin Malone and asked if Mr. Russo was for real. Kevin assured me that a member of his firm knew Mr. Russo and was in charge of Mr. Russo's brokerage account. They needed to transfer the

2

*14*

shares to obtain the financing from Mr. Russo.  I said it was up to Sunshine Design to bring in the money and I had no objection to a transfer for that purpose, but I had no say over Sunshine Design's shares, except that they had only been issued for the financing that was allegedly in place.

On or about May 19, 2009, we downloaded and printed a document titled "Consulting Agreement" that had been sent to Baltia by Mr. Russo.  Mr. Russo came to Baltia's headquarters saying that in addition to his investment he had spoken to several wealthy friends who were going to invest in Baltia, but that he wanted a commission.  We were delighted.  We told him that Baltia would gladly pay a commission for money accepted by Baltia over and above the financing exchanged for the Sunshine Design shares, of which he had received 4,000,000 shares.  To clarify the agreement, I struck the words "and is interested in being introduced to acquisition candidates" from his initial language, and I specified that Mr. Russo is to be compensated a commission of 7% cash on equity investments and 3% cash on debt financing payable after receipt of money by Baltia.  It was specified that, "he [Mr. Russo] may not" engage in any other work for Baltia.

On May 22, 2009, I received a strange phone call from Mr. Russo.  He said that he no longer wanted to be associated with Mr. Fisher (Sunshine Design 09, Inc.), but that since he was the real financier he wanted the original financing all to himself.  He claimed that he and Mr. Fisher had had a fight.  Baltia's V.P. Finance and I were very worried because the cash investment and the lines of credit were to have been delivered two months earlier.  A financier that we did not know [Mr. Russo] had appeared as the underlying money source for Sunshine Design 09, Inc, and now there was a fight between them!?!  I telephoned Mr. Fisher to discover what was wrong.  Mr. Fisher sounded shocked, knew of no fight and had had no argument with Mr. Russo.  Mr. Fisher's response is confusing since I later learned that on April 29, 2009, at 3:59 pm, Mr. Russo had emailed to Mr. Fisher stating:  "Mr. Russo has decided not to go forward with Baltia Air Lines."

Because no cash or lines of credit were delivered to Baltia, I requested that Sunshine Design return the shares.  Mr. Fisher kept on delaying the return, claiming that Mr. Russo had promised to return the 4,000,000 shares in his possession but was dragging his feet.  Mr. Malone personally handed 11,000,000 shares to me.  Along with the shares he delivered a note signed by the Secretary of Sunshine Design 09, Inc.  The note requested that Baltia help in obtaining the return of 4,000,000 shares from Mr. Russo who had not kept to his verbal agreement regarding the issuance of these shares to him and Mr. Russo did not appear willing to return them.  When I asked Kevin Malone why, on March 17, 2009, they had represented to Baltia that the financing was in place, Mr. Malone apologized saying, "We shouldn't have presented it like that."  At that point, Baltia was assured that the March 17, 2009 presentation was false and done to obtain 15,000,000 shares.  Otherwise, Baltia would never have issued the shares on a future promise to pay.

As late as September 16, 2009, Mr. Klein stated that Mr. Russo was returning the shares.  But even here Mr. Russo was playing games. According to Mr. Klein, Mr. Russo sent the certificate for 4,000,000 to Mr. Klein to be returned to Baltia - so that Baltia would withdraw the complaint that had just been filed with the SEC. However, the moment the complaint was withdrawn Mr. Russo changed his mind and asked his co-conspirator Mr. Klein to send the certificate back to him, instead of handing it to Baltia. This appears to be pre-meditated.  Baltia holds Mr. Klein responsible as Russo's accomplice for returning the certificate to Mr. Russo when he knew the shares had been ill-gotten by Mr. Russo.

3

15

I believe that Mr. Malone has integrity and was used by the scammers to gain access and have credibility at Baltia. I think that he would not have approached Baltia with his "dream team of Wall Street" with assurance that financing was in place and request 15,000,000 shares unless he had been convinced that the funding was genuine, not bogus.

It is our belief that Mr. Russo had deliberately misrepresented himself to Sunshine Design 09, Inc. as being the source of funds for Baltia and that Sunshine Design, relying on his misrepresentation, in turn, misrepresented to Baltia.

Under penalty of perjury I affirm that my statement is true and complete to the best of my knowledge.


Igor Dmitrowsky, President
Baltia Air Lines, Inc.

Sworn before me
This 22nd day of October 2009

LAWRENCE T. HURWITZ
ATTORNEY AND COUNSELOR AT LAW
NO. 08HU606082
QUALIFIED IN KINGS COUNTY
TERM EXPIRES MARCH 17, 2011

4

16



JFK International Airport, Terminal 4, Unit 262.089, Jamaica, NY 11430

### AFFIDAVIT
### of
### Barry Clare, VP Finance
### Baltia Air Lines, Inc.

I, Barry Clare, VP of Finance of Baltia Air Lines, Inc., affirm as follows:

Baltia Air Lines was scammed out of 4 mm shares by Mr. Salvatore Russo.

<u>Background</u>

I was introduced to Kevin Malone through Baltia's CEO Igor Dmitrowsky. Mr. Malone who is a professional on Wall Street came to Baltia's office with two of his associates who were also so called Wall Street professionals, Mr. Tom Fisher and Mr. Pat Kolenic (collectively the "Parties") for the purpose of helping Baltia with its equity raise of capital.

To my best recollection the initial meeting with the Parties was back in March of 2009 at Baltia's office located at Terminal 4 JFK. At this meeting the Parties represented to Igor and to myself, that they had already had in place $2.5 mm in place equity capital, two lines of credit from a bank and they could also help with the investor relations. In fact, the Parties asked how we raised capital for Baltia and I told the Parties I had been raising capital for Baltia through a limited private placement in small increments available to accredited investors. The Parties basically made fun of me telling me to stop raising capital because they would handle all of the capital needs for Baltia. The Parties came on so strong and sounded so convincing that they had already raised the capital sought, that Baltia agreed to issue the Parties 15mm shares for the financing. Not only did the Parties state they had the capital and lines of credit already in place, they had a grand plan for creating investor awareness, it all sounded great at the time and I was convinced that the Parties were for real and could deliver as promised.

Shortly, after this initial meeting the Parties were issued 15 mm shares of Baltia stock. Subsequently, I found out that the capital source and lines of credit were being supplied by Mr. Salvatore Russo, when Mr. Russo came to Baltia's office with the Parties, his associate Jim Morrell and a lady friend. At this meeting he confirmed that he had already in place $2.5 mm in equity capital and two lines of credit for $5 mm each for Baltia. Mr. Russo was issued 4 mm shares of Baltia common stock by the Parties because the Parties believed he had the capital and lines of credit in place.

**Salvatore Russo telephone conversation**

On July 10, 2009 at 1:45 pm I called Mr. Salvatore Russo on his mobile cell phone to talk about his failure in delivering $2.5 million dollars in equity capital and two lines of credit for $5 million each as he clearly stated he had in place and would deliver to Baltia. Also on this telephone call I told Mr. Russo that he should return the 4,000,000 common

63-25 Saunders St, Ste 71 Rego Park, NY 11374    Tel 718 275-5205 Fax 718 275-4731

*17*

shares of Baltia which were issued to him by the Parties because he had not delivered anything to Baltia, not one penny nor any lines of credit.

When I called Mr. Russo at 1:45 Mr. Russo immediately became suspicious that I had him on speaker phone, I told him that he was on speaker and that this was a normal way for me to talk to people when discussing business. Mr. Russo felt as though he was being recorded and said to me that he would call me back in 5 minutes. I said ok. Mr. Russo did call me back in 5 minutes and this time Mr. Russo wasn't on speaker telephone but he kept on accusing me of having him on speaker phone. As for the conversation, I asked him about the capital and the lines of credit he promised to deliver to Baltia, and why he never kept in touch with me to get updates about Baltia.

Mr. Russo flat out told me that the money he thought he had raised for Baltia was not there and he was doing terrible in his efforts to raise capital for Baltia. I stated to Mr. Russo again that he should return the 4 mm shares because he didn't deliver the equity capital nor any line of credit as he had stated he already had in place. Mr. Russo told me that he wasn't going to return the shares because he was still working on it. I told Mr. Russo again that we wanted the shares back because he failed to deliver as promised. Mr. Russo then got confrontational and started making accusations about Baltia, myself and William Kassar, Baltia's Director of Investor Relations, I told Mr. Russo that Baltia, William Kassar and myself had nothing to do with the fact that he didn't deliver as promised.

Additionally, when I asked Mr. Russo for the stock back he stated that he was given worthless restricted paper so I asked Mr. Russo why he took the deal if he was receiving worthless paper, I told Mr. Russo that I hoped he took the deal because he liked Baltia and the potential it had. I told Mr. Russo that I thought it was strange that he never called to get updates or find out what's going on with the company after he made the comments of having the equity capital and lines of credit. Mr. Russo stated that he didn't have to call. I told Mr. Russo that all I expected was for him to stay in touch and deliver the capital as promised. Mr. Russo got more irritated every time I asked for the shares back and continued speaking in a bad tone of voice. Mr. Russo then stated something about putting on boxing gloves, guess he was talking about the tone of our conversation. I told Mr. Russo that I wasn't trying to be confrontational with him; all I was asking for, was the shares back because he didn't provide a single penny for the company, and I believed that Baltia got scammed. He then told me that he was working on some new things for Baltia and would have Bruce Klein call me with the info. At that point, I saw that I wasn't getting anywhere with the conversation and if I continued, it would go no where so I decided to end the conversation.

The fact remains that Mr. Russo didn't bring in a single penny or any line of credit for Baltia as he said he already had in place and he is still holding onto 4 mm shares of Baltia's common stock.

July 31, 2009

Under penalty of perjury I affirm that my statement is true and complete to the best of my knowledge.

_____
Barry Clare, VP Finance, Baltia Air Lines

Sworn before me
This 22nd day of October 2009

_____

LAWRENCE T. HURWITZ
ATTORNEY AND COUNSELOR AT LAW
NO. 02HU6080082
QUALIFIED IN KINGS COUNTY
TERM EXPIRES MARCH 17, 2011

Prepared by STANDARD REGISTRAR AND TRANSFER COMPANY, INC.
BALTIA AIR LINES, INC.  -  COMMON
Transfer Activity Report for the period from March 1, 2009 through March 31, 2009

Date Printed: 4/13/2009
Page No. 3

| | Cert No | Received | Issued |
|---|---|---|---|
| SUNSHINE DESIGN 09 INC | (R)1542 | | 5,000,000 |
| SUNSHINE DESIGN 09 INC | (R)1543 | | 4,000,000 |
| SUNSHINE DESIGN 09 INC | (R)1544 | | 3,000,000 |
| SUNSHINE DESIGN 09 INC | (R)1545 | | 2,000,000 |
| SUNSHINE DESIGN 09 INC | (R)1546 | | 1,000,000 |
| Totals this item: | | | 15,000,000 |

19

Prepared by STANDARD REGISTRAR AND TRANSFER COMPANY, INC.
BALTIA AIR LINES, INC.  -  COMMON
Transfer Activity Report for the period from March 1, 2009 through March 31, 2009

Date Printed: 4/13/2009
Page No. 3

| | Cert No | Received | Issued |
|---|---|---|---|
| SUNSHINE DESIGN 09 INC | (R)1542 | | 5,000,000 |
| SUNSHINE DESIGN 09 INC | (R)1543 | | 4,000,000 |
| SUNSHINE DESIGN 09 INC | (R)1544 | | 3,000,000 |
| SUNSHINE DESIGN 09 INC | (R)1545 | | 2,000,000 |
| SUNSHINE DESIGN 09 INC | (R)1546 | | 1,000,000 |
| Totals this item: | | | 15,000,000 |

**Prepared by STANDARD REGISTRAR AND TRANSFER COMPANY, INC.**

BALTIA AIR LINES, INC.                                    COMMON                                    Date Printed: 6/22/20

Transfer Activity Report for the period from May 1, 2009 through May 31, 2009                                    Page No.

AM

#59720  5/8/2009  Requested by SUNSHINE DESIGN 09 INC                          COMPLETED 5/8/2009 11:45:09 AM

|  | Cert No. | Received | Issued |
|---|---|---|---|
| Certificates received for transfer: |  |  |  |
| SUNSHINE DESIGN 09 INC | (R)1542 | 5,000,000 |  |
| SUNSHINE DESIGN 09 INC | (R)1543 | 4,000,000 |  |
| SUNSHINE DESIGN 09 INC | (R)1544 | 3,000,000 |  |
| SUNSHINE DESIGN 09 INC | (R)1545 | 2,000,000 |  |
| SUNSHINE DESIGN 09 INC | (R)1546 | 1,000,000 |  |
| Certificates issued in transfer: |  |  |  |
| S O S RESOURCE SERVICES, INC. | (R)1591 |  | 4,000,000 |
| CAROLYN BROWN-BOECKMAN | (R)1592 |  | 5,000,000 |
| CAROLYN BROWN-BOECKMAN | (R)1593 |  | 3,000,000 |
| CAROLYN BROWN-BOECKMAN | (R)1594 |  | 2,000,000 |
| CAROLYN BROWN-BOECKMAN | (R)1595 |  | 1,000,000 |
| Totals this item: |  | 15,000,000 | 15,000,000 |

#59                                                                                    :03 AM

#59'                                                                                    4 PM

#59£                                                                                    30 PM

20

Prepared by STANDARD REGISTRAR AND TRANSFER COMPANY, INC.
BALTIA AIR LINES, INC.                    COMMON                                        Date Printed: 6/22/20

Transfer Activity Report for the period from May 1, 2009 through May 31, 2009                    Page No.

AM

#59720  5/8/2009  Requested by SUNSHINE DESIGN 09 INC                                COMPLETED 5/8/2009 11:45:09 AM

| | | Cert No. | Received | Issued |
|---|---|---|---|---|
| Certificates received for transfer: | | | | |
| SUNSHINE DESIGN 09 INC | | (R)1542 | 5,000,000 | |
| SUNSHINE DESIGN 09 INC | | (R)1543 | 4,000,000 | |
| SUNSHINE DESIGN 09 INC | | (R)1544 | 3,000,000 | |
| SUNSHINE DESIGN 09 INC | | (R)1545 | 2,000,000 | |
| SUNSHINE DESIGN 09 INC | | (R)1546 | 1,000,000 | |
| Certificates issued in transfer: | | | | |
| S O S RESOURCE SERVICES INC | | (R)1591 | | 4,000,000 |
| CAROLYN BROWN-BOECKMAN | | (R)1592 | | 5,000,000 |
| CAROLYN BROWN-BOECKMAN | | (R)1593 | | 3,000,000 |
| CAROLYN BROWN-BOECKMAN | | (R)1594 | | 2,000,000 |
| CAROLYN BROWN-BOECKMAN | | (R)1595 | | 1,000,000 |
| | Totals this item: | | 15,000,000 | 15,000,000 |

#59                                                                                              :03 AN

#59                                                                                              4 PM

#59                                                                                              30 PN



## *BALTIA AIR LINES*

The New Way to Europe.

Baltia Air Lines, Inc.
63-25 Saunders St., Ste 71
Rego Park, NY 11374

Tel (718) 275-5205
Fax (718) 275-4731

June 20, 2009

Standard Registrar & Transfer Company
12528 South 1840 East
Draper, UT 84020

*Per phone w/ Cindy.
"Stop" placed on
certificates today 6/22/09
sfl*

Via Fax: (801) 571-2551

Dear Amy,

Baltia may have been the victim of a conspiracy of fraudulent taking 15,000,000 common shares of Baltia stock. Our General Counsel is preparing an injunction action to be filed with the courts.

Do not execute any transactions and retain **all certificates related to** those issued in transfer to Sunshine Design 09 Inc. on March 23, 2009:

|  | Cert No | Issued |
| --- | --- | --- |
| Sunshine Design 09 Inc | (R ) 1542 | 5,000,000 |
| Sunshine Design 09 Inc | (R ) 1543 | 4,000,000 |
| Sunshine Design 09 Inc | (R ) 1544 | 3,000,000 |
| Sunshine Design 09 Inc | (R ) 1545 | 2,000,000 |
| Sunshine Design 09 Inc | (R ) 1546 | 1,000,000 |

Without Baltia's receipt of money or credit, Sunshine Design 09, Inc. transferred the above stated shares on May 8, 2009 as follows:

| Transferred to: | Cert No. | Issued |
| --- | --- | --- |
| Carolyn Brown-Boechman | (R )1545 | 5,000,000 |
| Carolyn Brown-Boechman | (R )1544 | 3,000,000 |
| Carolyn Brown-Boechman | (R )1545 | 2,000,000 |
| Carolyn Brown-Boechman | (R )1546 | 1,000,000 |
| SOS Resource Services, Inc. | (R )1543 | 4,000.000 |

Background. On March 17, 2009, in exchange for 15,000,000 Baltia common shares, four persons, whom I do not wish to name in this correspondence [herein Sunshine Design 09, Inc], committed to an immediate investment of $2,500,000 and to a bank letter of credit in the amount of $5,000,000 for the purchase of an aircraft. Baltia fulfilled its obligation by issuing the above stated stock to Sunshine Design 09 Inc. Instead of delivering money and the line of bank credit the leader of Sunshine Design 09, Inc, provides plausible explanations and assurances that moneys and line of credit are about to be delivered, but neither money nor bank line of credit has been received by Baltia.

On Friday, June 19, 2009, Baltia gave the four persons, through their leader, two weeks to return the shares if Baltia does not receive the stated investment and bank line of credit. If the money and bank line of credit are not received by Baltia at its JKF office on or before 5:00 pm on Friday, July 3,

2009, the Sunshine Design 09, Inc. leader promised to me that he will deliver the 15,000,000 above identified shares to Baltia's office at JFK prior to 5:00 pm close of business on July 3, 2009.

I have discussed the situation with Steffanie, our Gen. Counsel. We are irrational to gift the shares. The 15,000,000 shares were issued solely for money and credit. If neither shares nor money and bank line of credit are received prior to July 3, 2009, Steffanie will involve law enforcement authorities and file appropriate legal action.

Baltia requests that the stock certificates identified above be confiscated and no transfers be affected for Baltia's certificates held by Sunshine Design 09 Inc, Carolyn Brown-Boechman, and SOS Resource Services, Inc. or successive transferees.

Thank you for your action in this urgent and critical matter.

Sincerely,

Igor Dmitrowsky
President
Baltia Air Lines, Inc.

cc: Steffanie Lewis, Esq.

2 2

**To:** Standard Registrar
**Subject:** RE: Baltia Air Lines, Inc. - stop on shares and request for June transactions

Yes, these shares were previously transferred to an immediate relative and Mr. Dmitrowsky had resquested that no further tranfer be processed.  The spokesperson for Sunshine said he was going to return the shares, impliedly held by the transferee relative.  My understanding is that they will be cancelled and retained as treasury shares.

My email to you today was a prevent the lifting of the stop on future transfers to give assurance that a scam would not be perpetuated further while Baltia gave the spokesperson time in which to return the shares.

Please let me know what, if any, procedures you would required to effect the cancelation and transfer to treasury.  I am very sorry that you have been inadvertantly brought into the problem that looks increasingly like a scam.

Thank you for all your assistance.

Steffamoe

Steffanie J. Lewis
General Counsel
Baltia Air Lines, Inc.

International Business Law Firm PC
1915 Eye Street, NW, Suite 500
Washington, DC 20006-2118

tel: 202-296-1111 / fax: 202-296-1175
slewis@iblf.com

---

**From:** Standard Registrar [mailto:standardregistrar@comcast.net]
**Sent:** Wednesday, July 08, 2009 3:26 PM
**To:** 'Steffanie J Lewis'
**Subject:** RE: Baltia Air Lines, Inc. - stop on shares and request for June transactions

Steffanie,

23

When we spoke about these shares previously, we discussed that the certificates had already been transferred. Are you getting the shares back from the individuals that they were transferred to?

Thanks,
Amy

STANDARD REGISTRAR & TRANSFER CO INC
12528 SOUTH 1840 EAST
DRAPER, UT 84020
PHONE: 801-571-8844   FAX: 801-571-2551
standardregistrar@comcast.net

-----Original Message-----
**From:** Steffanie J Lewis [mailto:slewis@iblf.com]
**Sent:** Wednesday, July 08, 2009 10:49 AM
**To:** standardregistrar@comcast.net
**Cc:** baltia@juno.com
**Subject:** Baltia Air Lines, Inc. - stop on shares and request for June transactions

Dear Amy,
    This follows Mr. Dmitrowsky's letter to you of June 20, 2009, and your affirmation that a stop was placed on certain Baltia shares initially issued to Sunshine Design 09 Inc.  Please be advised that the spokesperson for Sunshine Design 09 Inc. has agreed to voluntarily return said shares by a date certain. Therefore, Baltia requests that the stop that was placed on those share remain in place until released or revoked by Mr. Dmitrowsky.  IBLF will be filing charges of fraudulent taking in the week of July 20, 2009 if the shares have not been returned.  For your protection, legal filings will be copied to you.

    Additionally, please email transactions from June 1, 2009 through June 30, 2009.

    Thank you for your consideration in both these matters.

Steffanie J. Lewis
General Counsel
Baltia Air LInes, Inc.

International Business Law Firm PC
1915 Eye Street, NW, Suite 500
Washington, DC 20006-2118

tel: 202-296-1111 / fax: 202-296-1175
slewis@iblf.com

24

July 31, 2009

Baltia Air Lines Inc.
63-25 Saunders Street
Suite 71
Rego Park, N.Y. 11374

Dear Igor,

Regarding our discussion yesterday, please help me with the issue of a breach in a verbal contract that has occurred between our company and S.O.S. Resource Solutions, Inc. With an address of 601 N.E. 36 Street, Suite 2009, Miami, Florida 33137. The tax I.D. number is 11-3532079. The President of S.O.S. is Mr. Sal Russo. On May 7th 2009 we instructed your Transfer Agent to issue certificate number 1543 for 4,000,000 shares of Baltia common stock to Mr. Russo. We were told that Mr. Russo then received the stock on May 11th. Mr. Russo has not kept to our verbal agreement regarding the issuance of these shares and at this time does not appear willing to return them in deliverable form. We therefore are requesting your help to have these shares returned to us.

Thank you in advance,

, Sec.

Sunshine Design 09, Inc.

26

 THE INTERNATIONAL BUSINESS LAW FIRM P.C.

Attorneys: Steffanie J. Lewis, Bhupinder Pal S. Chhabra,  Albert Z. Lewis, Jr., Alexandru I. Craciunescu
Of Counsel: Robert M. Price, R. Brooke Lewis

1915 Eye Street N.W. Suite 500
Washington, DC 20006-2118

Telephone: (202) 296-1111
Fax: (202) 296-1175
www.iblf.com

August 14, 2009

Via Priority Mail - Signature

Standard Registrar & Transfer Co., Inc
12528 South 1840 East
Draper, UT 84020

Ref: Baltia Air Lines 15,000,000 shares on stop

Dear Amy:

   Good news is that the accompanying 11,000,000 shares were returned to Baltia.  Please return them to Treasury stock.

   Bad news is that 4,000,000 share have not been returned.  As previously stated, Baltia will commence action against the fraudulent taking of those shares.


Sincerely,

/S/

Steffanie J. Lewis
General Counsel
Baltia Air Lines, Inc

Enclosures:

Enclosed Shares
1592   5,000,000     (five million) in name of Carolyn Brown-Boeckman
1595   1,000,000     (one  million) in name of Carolyn Brown-Boeckman
1594   2,000,000     (two  million) in name of Carolyn Brown-Boeckman
1593   3,000,000     (three  million) in name of Carolyn Brown-Boeckman

Fraudulently Taken Shares: Please keep them in stopped status
       4,000,000 (four million) shares transferred out of the name of Sunshine Design
       09, Inc. Into the name of S.O.S. Resouce Services, Inc. on or about  May 7, 2009.


cc: Baltia



Home | Previous Page

U.S. Securities and Exchange Commission

Dear Investor:

**Thank you for contacting the SEC.**

This acknowledges that we have received your complaint. **Please do not send us another copy of your complaint by mail or fax as this will only delay the complaint process.** Click on the button below to print a copy of this acknowledgement.

Your complaint will be assigned to one of our investor assistance specialists who will respond to you within a few days. In the meantime, we encourage you to visit the Investor Information section of our website at www.sec.gov/investor.shtml. You may find a quick answer there to your questions or concerns. If you do, please let us know that you've found what you're looking for and don't need a response from us.

Once again, thank you for contacting us. We hope our services will prove helpful to you.

Sincerely,

Office of Investor Education and Assistance
U.S. Securities and Exchange Commission

| Print Complaint Summary |
| --- |

You told us that we may, if appropriate, send your complaint to the firm or company involved.

**Tell Us About Yourself**

| | |
| --- | --- |
| Name | Ms. Steffanie J. Lewis |
| Address | 1915 Eye Street, NW<br>Suite 500<br>Washington, DISTRICT OF COLUMBIA  20006-2118<br>  UNITED STATES |
| Daytime<br>Phone | 202 296 1111 |
| Alternate<br>Phone | |

Fax  202 296 1175

Email  slewis@iblf.com

You are a  Issuer/Attorney for an Issuer


## Tell Us About the Firm or Individual You Have a Complaint Against

Name  Sunshine Design 09, Inc.

Type

Broker, Adviser,  Thomas Fisher
or Salesperson

Address  182 McConnell Ave.
Bayport, NEW YORK  11705  UNITED STATES


## Tell Us About Your Investment

Type of Security  Commodity Stock Index Options

Name of Issuer or Security  Baltia Air Lines, Inc.

Security Symbol  BLTA


## Tell Us About Your Complaint

URGENT SHARES BECOME TRADEABLE SEPTEMBER 23

A conspiracy of four professionals deceived Baltia into issuing 15,000,000
share for $12,500,000. Money never received and 11,000,000 shares
returned. Fraudulently taken were 4,000,000 shares.

[Apparently Mr. Malone brought Mr. Thomas Fisher into the financing. He
in turn brought in Mr. Bruce Klein who identified Mr. Salvatore Russo, the
source of the funding. Russo apparently assured them that funding was in
place. All this was unknown to Baltia when it agreed to the exchange, but
the apparent conspiracy has come to Baltia's attention as each person
began talking of his role. Mr. Russo is refusing to return the shares.]

Mr. Kevin Malone, Baltia very good friend of years represented that his
team had the financing in place:bank credit for $5,000,000; cash
Investment of $2,500,000; second bank credit for $5,000,000 not for
immediate use.

On March 24, 2009, as agreed, Baltia delivered 15,000,000 shares to Mr.
Malone but Mr. Fisher did not deliver the money and introdice Mr.
Salvatore Russo as the source of financing.

On August 4, 2009, Mr. Malone returned 11,000,000 shares with a note

requesting help in getting 4,000,000 from Mr. Russo. When questioned why on March 17th, they represented financing in place, Mr. Malone apoligized, "We should not have presented it that way."

Mr. Russo's action show that he is delaying until share are marketable on September 23, 2009.

Can you provide
cancelled checks?

Can you provide correspondence   Yes
to and from Firm?

Can you provide advertising or
marketing materials?

Can you provide notes   Yes
of conversation with Firm?

Can you provide
other materials?

### Tell Us What Action You Have Taken

Have you complained to the firm?   Yes

Regulators Contacted

Action Taken

Legal action has not been taken but may need to be taken to prevent trades of the fraudulently taken shares. Also, we have been unable to contact Sunshine Designe 09, Inc. directly because there is no telephone listing for the corporation or its Chairman or Chief executive Officer and no Registered Agent is listed with New York Corporation. The Secretary of Sunshine Design 09, Inc. said he would return two calls over a period of two weeks but never did so.

**Steffanie J Lewis**

*STOP confirmed by telephone. 9-23-09  SL.*

**To:** 'Standard Registrar'
**Cc:** 'baltia@juno.com'
**Subject:** FW: Baltia Air Lines

Amy,
   My message below incorrectly idenditified the certificate by number 1543.  I understand that 1543 was cancelled when it was reissued as (R)1591.  I have replaced the incorrect number "1543" with the correct number "1591" in my message below.  Thank you.

Steffanie J. Lewis
International Business Law Firm PC
1915 Eye Street, NW, Suite 500
Washington, DC 20006-2118

tel: 202-296-1111 / fax: 202-296-1175
slewis@iblf.com

---

**From:** Steffanie J Lewis [mailto:slewis@iblf.com]
**Sent:** Wednesday, September 23, 2009 1:20 PM
**To:** 'Standard Registrar'
**Cc:** 'baltia@juno.com'
**Subject:** Baltia Air Lines

Amy,

1)  Please continue to hold the STOP on Baltia certificate 15 91.  Certificate becomes tradeable today. DO NOT place certificate in Cede & Co name.  See details below.

This request follows my letters to you of June 20, 2009 and Aubust 14, 2009 in which certificates 15 9 2, 1593, 1594 1595 were returned as treasury shares.  Pursuant to the August 14th letter, Baltia initiated enforcement action as to certificate 15 91.  Fortunately, it appears that the certificate has been delivered to a third person who is to personally deliver it to me on Monday, September 28,2002.  With that assurance from the 3rd party, the enforcement action taken was withdrawn.

I am a reasonable person to have withdrawn the action, but there exists a possiblity that no delivery will be made to me on Monday.  If delivery fails the enforcement action will be reinstated.

Assuming the delivery occurs, I will send an email confirming my receipt of certificate 15 91  and will send it onto you as treasury stock by US Priority Mail.

Until receipt of my emial confirming receipt, PLEASE STOP ANY ATTEMPTED TRANSACTION on Certificate 1544.  I am particularly concerned.  Persuant to a telephone conversation, I learned that an official of Standard Registrar & Transfer Co Inc., had issued a letter affirming that the certificate was valid and there were no holds on its transfer.  The letter dated 8/6/09 was from Andrew Garduno (spelling unsure as name was give over the telephone), Transfer Agent, stating that there were no restrictions on certificate 15 91 .

2)  Please email Baltia's Transfer Activity report for the period from August 1, 2009 through August 30, 2009.

Thank you for both requests.  I will telephone to confirm the stop of certificate 15 91 .

Steffanie

*30*

9/23/2009

**Steffanie J Lewis**

| | |
|---|---|
| **To:** | miami@ic.fbi.gov; newyork@fbi.gov |
| **Cc:** | 'baltia@juno.com' |
| **Subject:** | Securities Fraud |

**Attachments:** Aff Clare & Dmitrowsky.pdf; Sunshine note for help.pdf; Rockey Mountain case.pdf

This email follows my telephone conversation with duty Agent, Miani, on 10/16/2009. This email is sent to FBI, Securities Fraud, in Miami and New York with the request that each speak with the other as this kind of scheme needs to be stopped. It appears that this is not the first such scheme that has involved Mr. Russo. Thank you.

I am General Counsel to Baltia Air Lines, Inc. (Baltia or Campany), a new US airline designated by the US Department of State to provide air service, under the US-Russia aviation agreement, between New York and St. Petersburg, Russia. Baltia applied with the US Department of Transportation in October 2007, was approved, is in final stages of FAA certification and has executed its agreement to purchase a B747 aircraft for the route. Baltia is a public company listed on Nasdaq OTCBB.

The Company is the victum or a fraud scheme in which Salvatore Russo has and refuses to return 4,000,000 Baltia common shares for which he has not paid. Four to six other persons were either knowingly or unwittingly accomplices. They made the scheme effective and were apparently intentionally used by Mr. Russo as a shield. At the time of the fraudulent scheme, Baltia had been negotiating to acquire a B747 aircraft.

The value of the shares is not material as this is a start-up company. Shares are generally purchased for the future value that they will have when the Company initiates its revenue flights. The number of shares outstanding is critical to current potential investors. The Company has an obligation to its shareholders to report the scheme and obtain the return of ill-gotten shares, not purchased.

Salvatore Russo - Miami Contact Information:
SOS Resource Services, Inc.
2520 Coral Way, Suite 2-171
Coral Gables, FL 33145
Tel: 786.462.6951
Fax: 786.464.0212
Cel: 786 200 2090

All actions taken with respect to the scheme were conducted in New York at the Company's headquarters or on Wall Street.

Salvatore Russo - New York Contact Information:
SOS Resource Services, Inc.
403 East Main St.
Port Jeffersonk NY 11777
Chairman or Chief Executive Officer: Salvatore Russo
Initial filing: December 09, 1999
Current Entity Status: Active

I, personally, have tried unsuccessfully to convince Mr. Russo that it is in everyone's best interest that he return the shares. He has side stepped and delayed until I realized my efforts were of no use. Other accomplices have also tried unsuccessfully to get Mr. Russo to return the shares. One accomplice wrote to Baltia asking for help in getting the share returned. Copy attached.

Details of the scheme are included in the attached affidavits of Mr. Igor Dmitrowsky, President & CEO, Baltia Air Lines, Inc. and the affidavit of the Company's V.P. Finance, Barry Clare. Both speak of their personal knowledge of the scham. As you see from the affidavits, the scheme was so well, and professionally, done that it only became obvious over time.

10/23/2009

31

**To:**          Standard Registrar
**Cc:**          baltia@juno.com
**Subject:**     Attention Ami:  Baltia Air Lines, certificate #1591 -  stop placed previously

*Feb, 26, 2010      2:07 p.m.*

Ami,

   I am Baltia's General Counsel.  Certificate #1591 was obtained through fraud.  An FBI investigation was initiated UNDER 18 USC 1438 on January 3, 2010 following earlier discussions with FBI.  Per suggestion by FBI agent, charges were previously prepared with the expectation that they would be filed today with both New York State police and Florida State police.

   I will also obtain a TRO from the Court for your protection.  As this is Friday afternoon, I may not be able to obtain it until Monday.  I understand that you have a 72 hour deadline.  When will that expire?  Thank you for your assistance in this matter.

   I await your response.  Thank you.

Steffanie

*32*

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Baltia Air Lines, Inc. ) | COMPLAINT AND |
| Plaintiffs, ) | |
| vs. ) | |
| ) | MOTION FOR |
| Standard Registrar & Transfer Co., Inc. ) | TEMPORARY  RESTRAINING |
| Defendant. ) | ORDER AND |
| ) | PRELIMINARY INJUNCTION |

**ORDER**

Upon consideration of plaintiff's Complaint and Motions for a Temporary Restraining

Order and a Preliminary Injunction, and accompanying supporting evidence, it is this _____

day of March, 2010,

ORDERED that the Motion for a Temporary Restraining Order and Preliminary

Injunction be  GRANTED.

_____
UNITED STATES DISTRICT JUDGE